# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 10, 1916.

ALBERT W. BOSS
VS.
MAUD I. BOSS.

*John C. Kump* for plaintiff.
*Charles F. Harley, amicus curiae.*

DAWKINS, J.—

This case presents a somewhat unusual situation in a divorce proceeding. A bill was filed by the husband against the wife, praying for a divorce a vinculo matrimonii on the ground of abandonment for the prescribed statutory period of three years. The defendant was summoned, but failed to enter any appearance. Proof was taken by the husband after a decree pro confesso

was obtained and it was established by the proof that the wife abandoned the husband about the 17th day of March, 1909, leaving the home to which she has never returned. The husband testified that the last time he heard of her she was in Baltimore and that the abandonment had continued uninterruptedly for six years prior to the 27th day of August, 1915, the date of the filing of the bill. The plaintiff's testimony was corroborated by his brother, the latter's testimony supplying apparently all necessary proof to make out a case entitling the plaintiff to the relief he sought.

Subsequently a certain Thomas F. Cunningham moved the Court that he be allowed to intervene in the case as an amicus curiae. Certain affidavits were filed prior to the making of said motion, alleging that the suit between the husband and the wife was collusive and that marital relations were existing between the husband and the wife; that the husband frequently visited the wife, etc. Whereupon the Court permitted testimony to be taken in support of said motion and affidavits through the instrumentality of the said Cunningham, who has admitted that he did not want the defendant to become free from her marriage bonds, as he thinks she intends to marry his (Cunningham's) son.

Whatever motive the intervenor may have had, there can be little doubt that the Court has a right to obtain information from any source so that it may not be duped and so that it will not have its eyes closed whilst the parties who are seeking the benefits of its decree arrange a plan of imposition. Therefore, the testimony offered by Mr. Cunningham is, in my judgment, perfectly proper for the Court to consider. There seems little doubt but that the plaintiff and defendant were seeing each other during the period when the plaintiff said his wife abandoned him. True, the visits, including the visits made at the Raborg street house, were alleged to have been made in regard to the children. If this be true and the husband was seeking or about to seek a divorce, why did he not charge the adultery of the wife, which seems to have been practically admitted? This is not given as a reason for the husband's disgust with the wife. If there was no arrangement to procure the divorce, why should the husband

have visited the wife at the Charles street apartment, where she was living in open adultery with young Cunningham? Why did the husband visit the wife after her somewhat notorious trip to Atlantic City with Cunningham? Why was counsel in the then pending case in Circuit Court No. 2 so soon visited and urged to press the suit? Surely if there ever was a case in which there has been a "suppression or perversion of important facts," this is a case. A most striking instance of apparent inaccuracy is the statement by the plaintiff that he does not remember whether or not he has been unfaithful to his marriage vows. The explanation hardly explains.

There seems to be no reason given for the abandonment except that the parties "agreed to disagree." Did the fact that she became or intended to become an inmate of a house of prostitution cause the alleged abandonment? Apparently it did not in any way disturb either of the parties, for the visits of the husband to the wife began as soon as the wife entered that house. He was on terms with the proprietress. The husband and wife were together at questionable places after that time. Whilst ordinarily the delay in instituting divorce proceedings would not be a fair matter of criticism, yet the fact that the husband was seeing the wife frequently during these six years lends color to the suspicion of collusion when no proceedings were instituted until nearly six years had elapsed after the alleged abandonment. The explanation of the visits by the husband to the wife's home can not be accepted as telling all that occurred. Without going over in further detail the testimony, I have reached the conclusion that there is so much that savors of an arranged case that the plaintiff does not seem to have come into court with "clean hands" and proven such a case of abandonment as commends him to the favor of the court. If the suit be collusive, then it is such a fraud on the court as would prevent the relief sought being granted.

Whilst the view expressed would be conclusive of the case, yet there is a further reason why the relief should not be granted. There was at the time this suit was instituted a case pending upon an identical cause of action between the same parties in the Circuit

Court No. 2 of Baltimore City. The court in which jurisdiction was first invoked has exclusive jurisdiction.

116 Md., Preston vs. Poe, 5.

93 Md., Wright vs. Williams, 70, and other cases.

Our own Court of Appeals has said that if the court is without jurisdiction that the parties can not give jurisdiction by consent.

47 Md. 359, Price vs. Hobbs.

Whilst the question of jurisdiction may be a technical one, yet feeling that the policy of the State should be rather to discourage than to encourage divorces, we should be exact in questions of this kind.

117 Md. 608, Harrison vs. Harrison.

For the reasons given the exceptions to the report of the auditor and master will be overruled and the report will be confirmed and the bill of complaint dismissed.